UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CLEBERSON QUADRELLI and ABDY NIZEYIMANA, on behalf of themselves and all others similarly situated,<br><br>Petitioners,<br><br>v.<br><br>ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility,<br><br>Respondent. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No. 20-cv-10685-ADB |

**MEMORANDUM AND ORDER ON MOTION FOR CLASS CERTIFICATION**

BURROUGHS, D.J.

This action was initiated on April 7, 2020, when a group of *pro se* civil immigration detainees ("Petitioners") at Plymouth County Correctional Facility ("PCCF") filed a petition for a writ of habeas corpus pursuant to 22 U.S.C. § 2241, naming Antone Moniz, Superintendent of PCCF ("Respondent"), as a respondent. [ECF No. 1]. Petitioners are seeking release through parole or bond, and a fast-tracking of their immigration cases due to their concerns about the risk of contracting COVID-19 while confined in a state correctional facility. [ECF No. 1 at 6–7]. Since filing their petition, several Petitioners have been terminated from the case due to release or transfer from PCCF, others have joined the case, and some have obtained counsel. At this time, there are forty petitioners actively seeking relief under two separate petitions. [ECF Nos. 1, 119]. Presently before the Court is a motion for class certification. [ECF No. 84]. For the reasons set forth below, the motion, [ECF No. 84], is GRANTED.

## I. BACKGROUND

### A. Factual Background

On March 11, 2020, the World Health Organization ("WHO") announced that, due to the "alarming levels of spread and severity, and by the alarming levels of inaction," it had "made the assessment that COVID-19 can be characterized as a pandemic." WHO, Director-General's Opening Remarks at the Media Briefing on COVID-19 (Mar. 11, 2020). Several weeks later, on March 23, 2020, the Commonwealth of Massachusetts, through an executive order signed by Governor Baker, limited activities taking place outside of the home through mandatory closure of non-essential businesses and a stay-at-home advisory issued by the Department of Public Health. Office of the Governor, COVID-19 Order No. 13 (Mar. 23, 2020). In response to these events, Petitioners initiated this action in early April, raising concerns about their safety at PCCF while being detained in connection with their respective immigration matters. [ECF No. 1].

The Centers for Disease Control and Prevention ("CDC") states that "COVID-19 spreads mainly among people who are in close contact (within about 6 feet) for a prolonged period," and recommends that individuals practice "social distancing" because "keeping space between [individuals] is one of the best tools we have to avoid being exposed to this virus and slowing its spread locally and across the country and world." CDC, Social Distancing: Keep Your Distance to Slow the Spread (last updated May 6, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html (last visited June 2, 2020). Even if an individual shows no signs of illness, the CDC advises that, "[s]ince people can spread the virus before they know they are sick, it is important to stay away from others when possible, even if you—or they—have no symptoms." Id. The CDC has also issued guidance specific to correctional facilities, recognizing that "[a]lthough social distancing is challenging to practice in

correctional and detention environments, it is a cornerstone of reducing transmission of respiratory diseases such as COVID-19." CDC, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, at 4 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf.  As of June 7, 2020, there were 103,436 cases of COVID-19 in Massachusetts with 8,363 cases in Plymouth County.  Massachusetts Department of Public Health, COVID-19 Dashboard, https://www.mass.gov/doc/covid-19-dashboard-june-7-2020 (last visited June 8, 2020).

Petitioners are currently being held in Unit C-3 at PCCF.  [ECF No. 22-1 ¶¶ 9, 12].  As of June 2, 2020, seven employees and two inmates at PCCF have tested positive for COVID-19, though none of these individuals worked within or were detainees in Petitioners' unit.  [ECF Nos. 51, 61-1, 69, 97, 131].  As of April 15, 2020, each Petitioner in Unit C-3 (nearly sixty petitioners at that time) had their own cell.  [ECF No. 22-1 ¶ 9].

Respondent has submitted affidavits from the Plymouth County Sheriff, Joseph D. McDonald, Jr., [ECF No. 22-1], who oversees the operation of PCCF, and from PCCF's Medical Director, Dr. Lawrence Baker, [ECF No. 22-2], outlining the steps PCCF has taken in response to COVID-19.  These steps include: suspending visits from friends, family members, and volunteers; preventing non-essential staff from entering the facility; suspending work crew and similar assignments that would result in inmates leaving and reentering the facility; isolating newly admitted inmates in a separate unit for a period of time; reducing inmate travel by conducting hearings via video and teleconference; splitting recreational and meal times to reduce the number of inmates who are in the same room at a given time; maintaining an "aggressive cleaning schedule"; educating staff and inmates on sanitation and social distancing practices;

providing soap and cleaning supplies to inmates weekly and as needed; conducting temperature screenings for all employees, contractors, and visitors; and providing surgical masks for all staff and inmates. [ECF No. 22-1 ¶ 6].

In addition to these precautions, there is a full-time medical staff on duty at PCCF twenty-four hours a day, seven days a week, including a doctor who is on site forty hours per week and a nurse practitioner who is on site thirty-six hours per week, as well as around-the-clock on-call coverage. [ECF No. 22-1 ¶ 3]. In addition to drafting guidelines specific to screening for and treating individuals who have or are suspected of having COVID-19, information about the virus and its spread has been posted in all units and visiting areas. [ECF No. 22-2 ¶¶ 8, 15]. The medical team is also monitoring all inmates who have reported chronic diseases or co-morbidities that make them more susceptible to infection. [Id. ¶¶ 20, 22].

Petitioners acknowledge that Respondent has taken steps to protect inmates' health but argue that these steps are insufficient. [ECF No. 42 at 4; ECF No. 85 at 5]. Petitioners allege that, despite the fact that inmates and staff have been issued masks, not all individuals wear them. [ECF No. 42 at 8]. In addition, Petitioners state that they cannot maintain social distance when lining up for and sitting during meal and recreation times, when using the telephones, or when lining up for medication or visits with medical staff. [Id. at 4–6].

In support of the motion for class certification, Petitioners have submitted an affidavit from Dr. Yonatan Grad ("Dr. Grad") and Emma Accorsi ("Accorsi"), both of whom are affiliated with Harvard University's T.H. Chan School of Public Health. [ECF No. 122]. Their affidavit highlights the risks of COVID-19 to those who are confined in crowded, indoor spaces with shared facilities where "the virus can easily spread through shared spaces such as toilets, showers, and eating areas because it can remain on surfaces for up to 72 hours." [ECF No. 122

¶ 7]. Dr. Grad and Accorsi also note that recent studies of incarcerated populations suggest that the majority of inmates who test positive for COVID-19 are asymptomatic and conclude that PCCF is not conducting sufficient testing to detect asymptomatic cases. [Id. ¶¶ 8–10].

### B. Procedural Background

There are two operative petitions in this action. [ECF Nos. 1, 119]. On April 15, 2020, Respondent moved to dismiss the first-filed petition, [ECF No. 21], which Petitioners opposed in various filings, [ECF Nos. 35, 42, 45, 49, 52–54, 58]. On May 5, 2020, the Court denied Respondent's motion to dismiss, finding that the Court had subject matter jurisdiction to consider the petition and that Petitioners had alleged facts sufficient to state a plausible claim. [ECF No. 79]. Also on May 5, 2020, Petitioners Cleberson Quadrelli and Abdy Nizeyimana ("Movants") filed the present motion for class certification on behalf of themselves and similarly situated petitioners. [ECF No. 84 at 1].[1] Respondent opposes the motion, [ECF No. 108], and Movants replied to the opposition, [ECF No. 130].

## II. LEGAL STANDARD

To obtain class certification under Federal Rule of Civil Procedure 23, a plaintiff must first satisfy the four requirements of Rule 23(a). They must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements "ensure[] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011). "The Rule's four requirements—numerosity, commonality, typicality,

[1] The motion was also submitted by Petitioner Evens Dry, who was released from PCCF and subsequently terminated from this case. See [ECF No. 88].

and adequate representation—'effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.'" Id. (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 156 (1982)). "The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013); see also Crowe v. ExamWorks, Inc., 136 F. Supp. 3d 16, 48 (D. Mass. 2015) ("[P]laintiffs must also satisfy one of the elements of Rule 23(b) to obtain class certification.").

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule . . . ." Wal-Mart Stores, 564 U.S. at 350. The Court must engage in a "rigorous analysis," which may involve "prob[ing] behind the pleadings" in order to decide whether certification is appropriate. Id. (quoting Gen. Tel. Co. of the Sw., 457 U.S. at 160).

## III. DISCUSSION

Movants ask this Court to name them as class representatives, appoint their counsel as class counsel, and certify various issues including whether continued confinement at PCCF in the midst of the current pandemic violates putative class members' rights under the Fifth Amendment. [ECF No. 84 at 1]. In addition, Movants seek to certify the following proposed class: "all civil immigration detainees who are petitioners in this action (i.e., who signed the original Petition . . . .) or are otherwise presently detained in unit C-3 at the PCCF." [Id.]. Respondent challenges only the commonality and typicality of the proposed class under Rule 23(a) and argues that Petitioners cannot satisfy the requirements under Rule 23(b)(2) because they seek relief that requires the analysis of disparate factual circumstances specific to each proposed class member. [ECF No. 108 at 3–4]. In addition, Respondent states that, under 8 U.S.C. § 1252(f)(1), the Court lacks jurisdiction to issue class-wide injunctive relief. [Id. at 8].

Given that numerosity and adequacy of representation appear well-established and Respondent does not object to class certification on either basis, the Court will limit its analysis to Respondent's challenges to commonality and typicality under Rule 23(a) and availability of a unified remedy under Rule 23(b)(2).

**A. Jurisdiction under 8 U.S.C. § 1252(f)(1)**

Respondent asserts that the Court lacks jurisdiction to provide class-wide injunctive relief, claiming that

> "[t]he text of 8 U.S.C. § 1252(f)(1) makes this plain: "Regardless of the nature of the action or claim . . . no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221–1232], other than with respect to the application of such provisions to an individual alien against whom proceedings . . . have been initiated."

[ECF No. 108 at 8 (alteration in original) (quoting 8 U.S.C. § 1252(f)(1))].

The Government recently raised the same objection to jurisdiction in Savino v. Souza, a matter before Judge Young, in which civil immigration detainees being held in the Bristol County House of Corrections are seeking relief similar to Petitioners. No. 20-cv-10617, 2020 U.S. Dist. LEXIS 61775, at *14–16 (D. Mass. Apr. 8, 2020). Just as in Savino, Petitioners here seek declaratory relief, as well as injunctive relief. [ECF No. 119 at 19 (asking the Court to "[d]eclare that the petitioners and class members are entitled to release, with appropriate conditions and precautionary public health measures")]. Section 1252(f) does not bar declaratory relief and is consequently not a bar to class certification. Savino, 2020 U.S. Dist. LEXIS 61775, at *16; see also Reid v. Donelan, 390 F. Supp. 3d 201, 226 (D. Mass. 2019) (noting that the court had previously rejected the Government's argument "that § 1252(f)(1) deprives the Court of jurisdiction to issue even a class-wide declaratory judgment concerning the rights of class members"). Further, in finding that declaratory relief was not barred under Section 1252(f)(1), Judge Young rejected the notion that injunctive relief was "categorically

unavailable" to petitioners who are similarly situated to the Petitioners in this case. Savino, 2020 U.S. Dist. LEXIS 61775, at *16 (citing Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018)).

As a result, the Court finds that, "at this class certification stage, it is enough to establish that the Court could provide a classwide remedy in the form of a declaratory judgment or injunctive relief. Having established that, the Court rejects the government's argument that section 1252(f) precludes class certification." Id.

**B. Commonality**

Rule 23(a)(2) requires the presence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has held that, "for purposes of Rule 23(a)(2) [e]ven a single [common] question will do." Wal-Mart, 564 U.S. at 359 (alteration in original) (internal quotation marks and citation omitted); see also Tracey v. MIT, No. 16-cv-11620, 2018 U.S. Dist. LEXIS 179945, at *11 (D. Mass. Oct. 19, 2018) ("The commonality requirement under Rule 23(a) is a 'low hurdle.'" (citing Swack v. Credit Suisse First Boston, 230 F.R.D. 250, 258 (D. Mass. 2005))). "A question is common if it is 'capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Parent/Prof'l Advocacy League v. City of Springfield, 934 F.3d 13, 28 (1st Cir. 2019) (quoting Wal-Mart, 564 U.S. at 350). In this analysis, the decisive factor is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Id. (quoting Wal-Mart, 564 U.S. at 350).

Movants suggest that one of the common questions among the proposed class is "[w]hether, due to the COVID-19 pandemic, the petitioners' continued civil detention at the PCCF violates their Fifth Amendment rights such that they should be released." [ECF No. 85 at 11]. Petitioners in Savino raised an almost identical common question. See 2020 U.S. Dist.

LEXIS 61775, at *18–19 ("Whether the conditions of confinement at Bristol County Immigration Detention Facilities, under the current conditions and in light of the COVID-19 pandemic, render class members' confinement a punishment that violates constitutional standards."). In particular, Movants note that all members of the proposed class are living in a communal setting that poses a heightened risk for infection in the midst of a pandemic. [ECF No. 85 at 11].

Respondent argues that this question cannot be answered on a class-wide basis because resolution would "require a fact-specific analysis of each class member—including their health, age, grounds for detention, and criminal histories . . . ." [ECF No. 108 at 12]. The Court disagrees. The common question identified by Movants focuses on the conditions at PCCF and the risk of infection to Petitioners in general, rather than on the unique impact of those conditions on individual petitioners. See [ECF No. 85 at 11; ECF No. 119 at 18 ("The confinement of the petitioners and class members subjects them to a heightened and unacceptable risk of contracting COVID-19, for which there is no vaccine or cure.")]. In a different context, the First Circuit has noted that a common question may be present where a specific "policy or practice" has an impact on a group. Parent/Prof'l Advocacy League, 934 F.3d at 28 n.14 ("The cases plaintiffs cite each involved a definable policy or practice imposed by a single entity or a small group of actors; these features facilitated the formulation of questions apt for class resolution.").

Other courts have certified classes of inmates who have alleged a general risk of harm due to a policy or practice, even if there might additionally be a unique or distinct impact as to an individual putative class member. See, e.g., Yates v. Collier, 868 F.3d 354, 363 (5th Cir. 2017) ("[T]he district court found, based on the expert testimony, that [the prison's] heat-mitigation measures . . . . were ineffective to reduce the risk of serious harm to a constitutionally

permissible level for *any* inmate, including the healthy inmates . . . ."); Parsons v. Ryan, 754 F.3d 657, 678 (9th Cir. 2014) ("[A]lthough a presently existing risk may ultimately result in different future harm for different inmates—ranging from no harm at all to death—every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide [] policy or practice that creates a substantial risk of serious harm."). In Savino, Judge Young likewise recognized that this question satisfied the commonality requirement of Rule 23(a). See Savino, 2020 U.S. Dist. LEXIS 61775, at *24 ("Here, too, even the otherwise healthy Detainees face a substantial risk of serious harm from COVID-19.").

The Court finds that Movants have satisfied the commonality requirement under Rule 23(a)(2).

**C. Typicality**

"Commonality looks at the relationship among the class members generally, while typicality focuses on the relationship between the proposed class representative and the rest of the class." George v. Nat'l Water Main Cleaning Co., 286 F.R.D. 168, 176 (D. Mass. 2012). A plaintiff "may establish typicality by demonstrating that '[their] claims arise from the same course of conduct that gave rise to the claims of the absent [class] members.'" In re Relafen Antitrust Litig., 231 F.R.D. 52, 69 (D. Mass. 2005) (second alteration in original) (quoting Duhaime v. John Hancock Mut. Life Ins., 177 F.R.D. 54, 63 (D. Mass. 1997)). "The 'typicality' requirement focuses less on the relative strengths of the named and unnamed plaintiffs' case than on the similarity of the legal and remedial theories behind their claims." Id. (quoting Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 472 (5th Cir. 1986)).

"Accordingly, the requirement is satisfied when 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the

defendant's liability.'" McAdams v. Mass. Mut. Life Ins. Co., No. 99-cv-30284, 2002 U.S. Dist. LEXIS 9944, at *13 (D. Mass. May 15, 2002) (quoting In re Sumitomo Copper Litig., 182 F.R.D. 85, 94 (S.D.N.Y. 1998)); see Ouadani v. Dynamex Operations E., LLC, 405 F. Supp. 3d 149, 162 (D. Mass. 2019) ("Typicality requires that the class representative's 'injuries arise from the same events or course of conduct as do the injuries of the class,' but his claims need not be 'identical to those of absent class members.'" (quoting Henderson v. Bank of N.Y. Mellon, N.A., 332 F. Supp. 3d 419, 427 (D. Mass. 2018))). Conversely, "[t]ypicality may be defeated where the class representatives are subject to unique defenses which threaten to become the focus of the litigation." Garcia v. E.J. Amusements of N.H., Inc., 98 F. Supp. 3d 277, 288 (D. Mass. 2015) (citation and internal quotation marks omitted).

Movants state that, as proposed class representatives, they satisfy the typicality requirement because they "are members of the class [and] have suffered the same injury (unsafe confinement) as the proposed class members . . . ." [ECF No. 85 at 12]. Respondent counters that Movants' "factual circumstances are too varied from those of the class members to satisfy commonality" and therefore "they also are unable to satisfy typicality." [ECF No. 108 at 16].

The Supreme Court has observed that

> [t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

Wal-Mart, 564 U.S. at 349 n.5 (quoting Gen. Tel. Co. of the Sw., 457 U.S. at 157–58 n.13 (1982)). All class members reside in the same unit at PCCF and are exposed to the same risk of contracting COVID-19, whether or not their individual health conditions may elevate their risk of getting or surviving the virus. [ECF No. 130 at 10]. Movants are thus typical of the class in that they are exposed to the same risks of being detained in Unit C-3 as other class members and

because their alleged harm arises out of "the same events or course of conduct" as other class members. See Ouadani, 405 F. Supp. 3d at 162. Movants are therefore in a position to "fairly and adequately" protect the interests of other class members. See Wal-Mart, 564 U.S. at 349 n.5.

The Court finds that Movants have satisfied the typicality requirement under Rule 23(a)(3).

**D. Relief Available to the Proposed Class**

Movants seek class certification under Rule 23(b)(2). [ECF No. 85 at 14]. "A class qualifies for certification under Rule 23(b)(2) when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" Donovan v. Philip Morris USA, Inc., 268 F.R.D. 1, 11 (D. Mass. 2010) (quoting Fed. R. Civ. P. 23(b)(2)). "In effect, the actual requirements of the Rule are meant to ensure there is group harm that a group injunctive remedy will correct." Id. at 12. In addition, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." Wal-Mart, 564 U.S. at 360.

Respondent claims that Petitioners' request for release for every class member cannot be resolved on a class-wide basis. [ECF No. 108 at 17]. As Judge Young noted in Savino, however, release is not the only remedy available to Petitioners. See 2020 U.S. Dist. LEXIS 61775, at *25. For example, the Court could issue "an injunction ordering the government to reduce crowding of [d]etainees." Id.; see also Brito v. Barr, 395 F. Supp. 3d 135, 147–48 (D. Mass. 2019) (granting class certification for civil detainees and noting that Rule 23(b)(2) requirement was met where declaratory judgment could explain bond procedures required under

Due Process without the court being required to grant bond hearings for all detainees); Reid v. Donelan, No. 13-cv-30125, 2018 U.S. Dist. LEXIS 181700, at *18 (D. Mass. Oct. 23, 2018) (stating that "[a] holding that the Constitution provides a right to a reasonableness hearing during a prolonged detention would resolve all class members' claims at once" without the need for individualized remedies, which would satisfy the requirements under 23(b)(2)).

Movants have therefore satisfied the requirements of Rule 23(b)(2) by demonstrating that a single remedy could provide relief to all class members.

## IV. CONCLUSION

Accordingly, Movants' motion for class certification, [ECF No. 84], is GRANTED. The Court certifies the following class:

> All civil immigration detainees who are Petitioners in this action (i.e., who signed the original petition, [ECF No. 1]) or are otherwise presently detained in Unit C-3 at the PCCF.

Movants, Petitioners Cleberson Quadrelli and Abdy Nizeyimana, are appointed class representatives and their counsel are appointed as class counsel.

**SO ORDERED.**

June 8, 2020                                             /s/ Allison D. Burroughs
                                                         ALLISON D. BURROUGHS
                                                         U.S. DISTRICT JUDGE