UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CLEBERSON QUADRELLI | ) | |
| and ABDY NIZEYIMANA, on behalf of | ) | |
| themselves and all others similarly situated, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-10685-ADB |
| | ) | |
| ANTONE MONIZ, Superintendent of the | ) | |
| Plymouth County Correctional Facility | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION
TO DENY PETITIONERS' SECOND AMENDED EMERGENCY PETITION FOR
<u>LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM</u>**

ANDREW E. LELLING
United States Attorney

JASON C. WEIDA
RACHEL GOLDSTEIN
Assistant U.S. Attorneys

United States Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts  02210
(617) 748-3100
jason.weida@usdoj.gov
rachel.goldstein@usdoj.gov

Dated: June 12, 2020                    *Attorneys for the Government*

Respondent Antone Moniz, Superintendent of the Plymouth County Correctional Facility ("Respondent"), respectfully submits this memorandum of law in support of his motion to deny Petitioner Cleberson Quadrelli's and Petitioner Jermaine Abdy Nizeyimana's Second Amended Emergency Petition for Writ of Habeas Corpus and Injunctive Relief (the "Amended Petition"), on behalf of themselves and the class (the "Petitioners"), for lack of jurisdiction and failure to state a claim pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **STANDARD OF REVIEW**

Because federal courts are considered courts of limited jurisdiction, "federal jurisdiction is never presumed." *Viqueira v. First Bank,* 140 F.3d 12, 16 (1st Cir. 1998). Rather, "'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir. 1995) (quoting *Taber Partners, I v. Merit Builders, Inc.,* 987 F.2d 57, 60 (1st Cir. 1993)). "Once a defendant challenges the jurisdictional basis for a claim under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction." *Excel Home Care, Inc. v. U.S. Dep't of Health & Human Servs.*, 316 B.R. 565, 567 (D. Mass. 2004). "In ruling on a motion to dismiss for lack of jurisdiction, 'the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of plaintiff.'" *Id.* at 568 (quoting *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996)). "That is not to say that this leniency eliminates the plaintiff's burden of proving an appropriate jurisdictional basis. Indeed, a plaintiff cannot assert a proper jurisdictional basis 'merely on unsupported conclusions or interpretations of law.'" *Id.* (quoting *Murphy,* 45 F.3d at 522).

Just as a plaintiff bears the burden of establishing subject matter jurisdiction, so too "the plaintiff bears the burden of plausibly alleging a viable cause of action" under Rule 8(a). *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016). The "'tenet that a court must

1

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Feliciano-Hernández v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). Rather, "'only a complaint that states a plausible claim for relief survives a motion to dismiss'" under Rule 12(b)(6). *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

**I. THE AMENDED PETITION MUST BE DENIED BECAUSE THIS COURT LACKS JURISDICTION TO GRANT CLASSWIDE RELIEF UNDER 8 U.S.C. § 1252(f)(1).**

In the Amended Petition, Petitioners seek the classwide remedy of release through "an appropriate injunction or declaration." Doc. # 119 ¶ 64 ("[B]ecause every member of the class is entitled to relief from this unconstitutional detention, an appropriate injunction or declaration will provide relief on a class-wide basis."). This Court lacks jurisdiction to grant that remedy by means of either an injunction or a declaration.

*First*, granting Petitioners the injunction they seek would transgress the plain text of § 1252(f)(1), which proscribes the imposition of any injunction that "restrain[s] the operation of" §§ 1221-1232 of the INA, "other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." The statute clearly bars classwide injunctive relief that halts the operation of §§ 1221-1232, something the Supreme Court has unequivocally held on two separate occasions. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018) ("Section 1252(f)(1) thus prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-123[2]."); *Reno v. Am.-Arab Anti-Discrimination Committee*, 525 U.S. 471, 481-82 (1999) ("By its plain terms, and even by its title, that provision

2

[section 1252(f)(1)] is nothing more or less than a limit on injunctive relief. It prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1231, but specifies that this ban does not extend to individual cases."); *see also Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018) ("*Reno* unambiguously strips federal courts of jurisdiction to enter class-wide injunctive relief for the detention-based claims."); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) ("§ 1252(f) forecloses jurisdiction to grant class-wide injunctive relief to restrain operation of §§ 1221–31 by any court other than the Supreme Court.")

This Court has not yet considered this question in the context of Rule 12(b)(1). This Court did address this question, however, in the context of class certification under Rule 23. Doc. # 135. In that context, this Court relied on Judge Young's decision in *Savino*, which "rejected the notion that injunctive relief was 'categorically unavailable' to petitioners who are similarly situated to the Petitioners in this case." *Id.* at pp. 8-9. As this Court recognized, Judge Young's decision in *Savino* relied, in turn, on the Ninth Circuit's opinion in *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). Doc. # 135 at p. 8. With due respect, *Savino* misread *Marin* and this Court ought not repeat that error here. *Marin*'s conclusion regarding jurisdiction was based not on the authority to grant classwide *injunctive* relief, but rather on the ability of the class to obtain *declaratory* relief. *See Marin*, 909 F.3d at 256 ("[E]ven if *Reno* . . . forecloses the argument that § 1252(f)(1) allows classwide injunctive relief, it does not affect classwide declaratory relief."). Were there any doubt on this score, the Ninth Circuit extinguished it by explicitly directing the district court to "decide in the first instance whether § 1252(f)(1) precludes classwide injunctive relief, and if so, whether the availability of declaratory relief only can sustain the class." *Id.* at 256 n.1. Thus, *Marin* simply recognized that the presence of a claim for classwide declaratory relief allowed the district court

3

to exercise subject matter jurisdiction consistent with § 1252(f)(1). *Marin* did not imply, much less hold, that section 1252(f)(1) authorizes classwide injunctive relief.

Moreover, that particular statement in *Savino* is irreconcilable with other decisions in this district. For example, Judge Saris's decision in *Brito* recognized that classwide injunctive relief mandating release—the very relief Petitioners seek here—would run afoul of the jurisdictional bar in § 1252(f)(1). *See Brito v. Barr,* 415 F. Supp. 3d 258, 269 (D. Mass. 2019) ("To be sure, the requested injunction requires the Government to follow certain constitutionally mandated due process procedures at bond hearings, but it does not mandate the release of any class members nor does it allow an opportunity for release not already provided by the statute. Therefore, the Court concludes Section 1252(f)(1) is inapplicable because the proposed injunction does not 'enjoin or restrict' the operation of the INA.") (internal citation omitted). Indeed, as a counterpoint, Judge Saris cited the Sixth Circuit's decision in *Hamama*, which expressly held that district courts lacked jurisdiction to enter classwide injunction ordering release of detainees. *Id.* Because that is exactly what Petitioners seek here, § 1252(f)(1) bars that classwide injunction.

*Second*, as for declaratory relief, it is true as a general matter that § 1252(f)(1) does not necessarily divest district courts of the power to grant classwide declaratory relief. But that does not mean that this Court can grant Petitioners a classwide *remedy of release* through a declaratory judgment. As Judge Saris has explained, in contrast to injunctive relief, "a declaratory judgment establishes the rights and other legal relations of the parties without providing for or ordering enforcement, and noncompliance does not trigger contempt." *Reid v. Donelan*, No. 13-30125-PBS, 2018 WL 5269992, at *7 (D. Mass. Oct. 23, 2018) (internal quotation marks and citations omitted). "A declaratory judgment thus does not prevent or limit any action." *Id.* And yet release through a declaratory judgment is precisely what Petitioners seek here. Doc. # 119 ¶ 64; *see also*

*id.* at p. 19 (prayer for relief) ("Declare that the petitioners and class members are entitled to release, with appropriate conditions and precautionary public health measures."). To the extent such relief is even available by declaratory judgment (and it is not), that relief would be functionally equivalent to a classwide injunction and is therefore barred by § 1252(f)(1). *E.g.*, *Hamama*, 912 F.3d at 880 n.8 ("The practical effect of a grant of declaratory relief as to Petitioners' detention would be a class-wide injunction against the detention provisions, which is barred by § 1252(f)(1).").

It is one thing to certify a class under Rule 23 because Petitioner seek declaratory relief, as this Court has already done. Doc. # 135. But it is entirely another thing to recognize, following a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), that Petitioners may seek a classwide remedy of release through a declaratory judgment. To do so would be error.

Accordingly, because this Court lacks jurisdiction to grant a classwide remedy of release by means of either an injunction or a declaration, the Amended Petition must be dismissed.

## II. THE AMENDED PETITION SHOULD BE DENIED TO THE EXTENT IT ASSERTS A FIFTH AMENDMENT VIOLATION BASED ON OBJECTIVE UNREASONABLENESS.

In the Amended Petition, Petitioners seek to establish a Fifth Amendment violation based not only on the burdensome "deliberate indifference" standard, but also the far less onerous "objective unreasonableness" standard that lacks a *mens rea* requirement. Doc. # 119 ¶ 41 ("Additionally, the Due Process Clause protects detainees, like petitioners, not only from conduct amounting to deliberate indifference, but also from objectively unreasonable conduct that creates a risk to their safety."). Because First Circuit law requires Petitioners to prove deliberate indifference, the Amended Petition must be denied to the extent it asks this Court to adopt a different standard of "objective unreasonableness."

Petitioners here must establish that Respondent acted "with deliberate indifference to a substantial risk of serious harm to health." *Coscia v. Town of Pembroke*, 659 F.3d 37, 39 (1st Cir. 2011); *accord Farmer v. Brennan*, 511 U.S. 825, 835 (1994). This standard has a subjective component; to satisfy it, they "must provide evidence that [Respondent] had actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented that harm." *Zingg v. Groblewski*, 907 F.3d 630, 635 (1st Cir. 2018) (quotation marks and citation omitted). The requisite mental state is said to be "characterized by obduracy and wantonness, not inadvertence or error in good faith," and "has been likened to . . . criminal recklessness." *Leite v. Bergeron*, 911 F.3d 47, 52-53 (1st Cir. 2018) (quotation marks omitted).

The First Circuit has not endorsed an "objective unreasonableness" standard for Fifth Amendment claims and this Court may not do so either. As other sessions of this Court have explained when faced with this very question, binding First Circuit precedent does not permit any standard other than "deliberate indifference" in a Fifth Amendment claim. *E.g.*, *Baez v. Moniz*, No. 20-10753, 2020 WL 2527865, at *6-7 (D. Mass. May 18, 2020) (Sorokin, J.) ("Though the petitioners urge that the two Amendments require different legal standards, with pretrial detainees facing a less daunting test under the Fifth Amendment than the 'deliberate indifference' showing required by the Eighth Amendment, the First Circuit has not endorsed such a view, so this Court may not do so either."); *Couchon v. Cousins*, No. 17-10965, 2018 WL 4189694, at *6 (D. Mass. Aug. 31, 2018) (Stearns, J.) ("[I]n the absence of a Supreme Court decision squarely on point, this court is bound by existing precedent in the First Circuit. In this circuit, the deliberate indifference test contains both objective and subjective components.").

Accordingly, to the extent the Amended Petition seeks to establish a Fifth Amendment violation based on an "objective unreasonableness" standard, it should be denied for failure to state

6

a claim. *E.g.*, *Coscia*, 659 F.3d at 39; *Baez*, 2020 WL 2527865, at *6-7; *Couchon*, 2018 WL 4189694, at *6.

### III. IF THE COURT'S PERMITS THIS HABEAS CASE TO PROCEED IN WHOLE OR IN PART, PETITIONERS ARE NOT ENTITLED TO DISCOVERY WITHOUT A SHOWING OF GOOD CAUSE.

Respondent takes this opportunity to provide his views on the availability of discovery in the event that this Court permits this habeas case to proceed in whole or in part. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).[1] For the reasons discussed below, this Court should not allow discovery absent motion practice and a finding of good cause for the specific discovery sought.

#### 1. Habeas Actions Typically Do Not Require Discovery.

There is no significant history of discovery in habeas cases prior to 1969, and there has never been any suggestion that the Constitution requires discovery in such proceedings. *See Harris v. Nelson*, 394 U.S. 286, 293 (1969) (in concluding that Federal Rules of Civil Procedure on discovery do *not* apply to habeas proceedings, explaining that "prior to [the promulgation of the federal rules in] 1938" there was no showing made that "discovery was actually being used in habeas proceedings"). In fact, it was "not until many years later" that factual questions were even considered in federal habeas cases, making it inconceivable that discovery would be an essential component of the writ. *Id.* at 295.

Thus, in the instant constitutionally-based habeas proceeding, there can be no question that the relevant settled habeas practice—not only in 1789, but for almost two centuries thereafter—

---

[1] Petitioners had the option to bring this case under Section 1983, where discovery following the denial of a motion to dismiss would have been automatic. Instead, they chose to bring this case as a habeas case, which does not provide discovery as a matter of right.

7

would preclude discovery. *See Harris*, 394 U.S. at 295. That habeas practice of 1789 did not contemplate discovery or fact-finding by the habeas petitioner is clear. Indeed, "[o]ne of the maxims of eighteenth-century habeas corpus practice had been that the petitioner could not controvert the facts stated in the return." Gerald L. Neuman, Habeas Corpus, Executive Detention, and the Removal of Aliens, 98 COLUM. L. REV. 961, 986 n.131 (1998) (citing, *inter alia*, R.J. Sharpe, The Law of Habeas Corpus 61-68 (1976)). The facts alleged by the Executive to continue to hold an individual "were to be taken as true, and the court was to determine whether the justification was legally sufficient." *Id.* Even in executive detention cases, courts traditionally conducted only limited factual review. *See INS v. St. Cyr*, 533 U.S. 289, 306 (2001) ("some evidence" review). While courts from the period permitted the prisoner to "allege additional facts consistent with the return that might rebut the appearance of justification," Neuman, 98 COLUM. L. REV. at 986 n. 131, that was not a constitutional requirement and certainly did not suggest that discovery was ever appropriate.

The Supreme Court has thus held, for example, that in view of the history of the writ and the intended scope of the Federal Rules of Civil Procedure, a petitioner does not have the right to serve interrogatories on his custodian (although the Federal Rules would otherwise allow for broad discovery in civil suits). *Harris*, 394 U.S. at 292-98. Significantly, in 1938, when the federal rules were initially adopted, the expansion of statutory habeas corpus practice to its present scope was only in its primordial stages. *Mooney v. Holohan*, 294 U.S. 103, 113 (1935); *Johnson v. Zerbst*, 304 U.S. 458, 459 (1938); *Waley v. Johnston*, 316 U.S. 101, 102 (1942). And it was not until many years later that the federal courts considering a habeas corpus petition even began to make an independent determination of the factual basis of claims that state convictions had violated the petitioner's federal constitutional rights. *See Brown v. Allen*, 344 U.S. 443, 447-48 (1953).

That the Constitution did not require such innovations to the habeas practice of 1789 is demonstrated by the need for subsequent legislation to expand fact-finding authority of federal courts, which did not occur until after the Civil War. *See* Act of Feb. 5, 1867, ch. 28, § 1, 14 Stat. 385 (stating that a "petitioner may deny any of the material facts set forth in the return, or may allege any fact to show that the detention is in contravention of the constitution or laws of the United States," and requiring the federal court to "proceed in a summary way to determine the facts of the case, by hearing testimony and the arguments of the parties interested"). And it was in 1890 that the Supreme Court, citing the Civil War era statute, held that the federal courts could have a proper role in determining certain non-jurisdictional facts. *See Cunningham v. Neagle*, 135 U.S. 1, 70-75 (1890). The statutory expansion of the fact-finding role only proves the point that such functions are never constitutionally required.

Modern developments in statutory habeas procedure cannot alter this constitutional ceiling. Thus, it is of no moment that in *Harris* the Court interpreted the All Writs Act, 28 U.S.C. § 1651, to authorize limited discovery in statutory habeas cases at the discretion of the court. Indeed, the fact that discovery, even in modern statutory habeas cases, is *entirely discretionary*, *see Harris*, 394 U.S. at 300; Habeas Rule 6(a),[2] provides a complete answer to the question whether it is constitutionally required. Moreover, recent developments in habeas practice cannot alter the fact that there was no constitutional requirement for discovery in habeas cases. The Suspension Clause of the Constitution cannot operate as a "one-way ratchet that enshrines in the Constitution every

---

[2] Although Petitioners filed this petition for a writ of habeas corpus under § 2241, Rule 1(b) of the Rules Governing Section 2254 Cases states: "The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a) [*i.e.*, a habeas corpus action under 28 U.S.C. § 2241]." Courts have so held. *E.g.*, *Bowers v. U.S. Parole Comm'n, Warden*, 760 F.3d 1177, 1183 (11th Cir. 2014) (applying Rules Governing Section 2254 Cases to a habeas corpus action under § 2241).

grant of habeas jurisdiction" conferred by statute or judge-made common law, *see St. Cyr*, 533 U.S. at 341-42 (Scalia, J., dissenting), for if it did, then the Antiterrorism and Effective Death Penalty Act of 1996, which limited state prisoners' access to the writ, would be unconstitutional, a proposition the Supreme Court rejected in *Felker v. Turpin*, 518 U.S. 651, 662-64 (1996) ("judgments about the proper scope of the writ are 'normally for Congress to make'") (citation omitted). Thus, there is significant support for the historical approach to habeas as providing the constitutional ceiling. *See Swain v. Pressley*, 430 U.S. 372, 384-85 (1977) (Burger, C.J., concurring in part and concurring in the judgment); Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 47 U. CHI. L. REV. 142, 170 (1970). Congress's repeal of habeas jurisdiction, in conjunction with the fact that constitutionally derived habeas corpus does not require discovery, is therefore fatal to the claim that discovery is appropriate in these proceedings.

### 2.     Petitioners Must Show Good Cause, But Are Unlikely To Do So Here.

"Discovery is available only if the judge in the exercise of his discretion and for good cause shown grants leave." *Lonchar v. Thomas*, 517 U.S. 314, 326 (1996) (citations omitted); *see also Drake v. Portuondo*, 321 F.3d 338, 346 (2d Cir. 2003) (petitioners are generally "not entitled to discovery as a matter of ordinary course . . . [unless there has been] a showing of good cause.") (citations omitted). "In order to show good cause, a petitioner must set forth specific allegations that provide reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Cobb v. Unger*, No. 1:09-CV-0491, 2013 WL 821179, at *2 (W.D.N.Y. Mar. 5, 2013) (internal quotation marks omitted). Moreover, "[t]he request must also include any proposed interrogatories and requests for admission, and must specify any requested documents." Habeas Rule 6(b).

Here, Petitioners are unlikely to demonstrate good cause for discovery based on the unique circumstances of this case. Although Petitioners did not seek preliminary injunctive relief in this case, the petitioners in the related *Baez* case—which involves similar claims in the same facility—did so and failed to show a likelihood of success on the merits based on Respondent's mitigations measures (which are equally applicable to Petitioners here). Doc. # 64 at p.19, *Baez v. Moniz*, No. 20-10753 (D. Mass. May 18, 2020) (Sorokin, J.) (ruling that "the petitioners have not established a likelihood of success on the merits of their constitutional claims"). That ruling in *Baez*, based on the conditions in the same facility that houses Petitioners here, presents a serious obstacle for their entitlement to discovery in this case. *E.g.*, *Towers Financial Corp. v. Dun & Bradstreet, Inc.*, 803 F. Supp. 820, 822 (S.D.N.Y. 1992) (citing *Local 1814 Int'l Longshoremen's Assoc. AFL-CIO v. New York Shipping Assoc., Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992)); *Perez v. U.S.*, No. 14 Civ. 846 (NRB), 04 Cr. 937-1 (NRB), 2015 WL 3413596, at *5 (S.D.N.Y. May 8, 2015) (denying motion for discovery in habeas case where the petitioner failed to show good cause because petitioner's argument was legally insufficient).

Moreover, Petitioners would have to explain why Respondent's numerous earlier submissions to the Court, consisting of several comprehensive declarations and status reports, are insufficient. And, because Petitioners in this case are free to review the supplemental materials Respondent submitted in the *Baez* case, they would have to explain why that voluminous additional material does not contain what they would seek in this case. *See, e.g.*, Doc. # 23, *Baez v. Moniz*, No. 20-10753 (Respondent's opposition to motion for injunctive relief with declarations); Doc. # 25, *Baez v. Moniz*, No. 20-10753 (Respondent's status report); Doc. # 31, *Baez v. Moniz*, No. 20-10753 (Respondent's response to court order with declarations); Doc. # 48 (Respondent's status report); Doc. # 53, *Baez v. Moniz*, No. 20-10753 (Respondent's status report); Doc. # 54, *Baez v.*

*Moniz*, No. 20-10753 (Respondent's response to court order with declarations); Doc. # 57, *Baez v. Moniz*, No. 20-10753 (Respondent's supplemental response with declarations); Doc. # 62, *Baez v. Moniz*, No. 20-10753 (Respondent's status report); Doc. # 68 (Respondent's status report); Doc. # 70, *Baez v. Moniz*, No. 20-10753 (Respondent's response to court order with information PCCF's medical director).

To the extent the Court is so inclined, the Court should enter a scheduling order requiring that any party wishing to seek discovery file a motion for leave to take discovery under a good cause standard. Any such motion or motions should include a proposed schedule for the discovery sought. If leave to take any discovery is allowed, such discovery shall proceed in the manner ordered by the Court. If leave to file discovery is not allowed, then Respondent shall file a dispositive motion addressing the merits of Petitioners' petition within three weeks of the Court's order finding that no discovery is appropriate.

## CONCLUSION

For all of the foregoing reasons, Respondent respectfully requests that the Court deny the Amended Petition and dismiss this case. Alternatively, Respondent respectfully requests that the Court not allow discovery absent motion practice and a finding of good cause for the specific discovery sought.

                              Respectfully submitted,

                              ANDREW E. LELLING,
                              United States Attorney

By:   */s/ Jason C. Weida*
       Jason C. Weida
       Assistant U.S. Attorney
       United States Attorney's Office
       1 Courthouse Way, Suite 9200
       Boston, Massachusetts  02210

|  |  |
|---|---|
| Dated:  June 12, 2020 | (617) 748-3180<br>Jason.Weida@usdoj.gov |